**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **TRAFFIC TECH, INC.,** | |
| *Plaintiff*, | **Case No. 14-CV-07528** |
| v | **Jury Demand** |
| **JARED KREITER** *et al.*, | **Honorable Robert M. Dow, Jr.** |
| *Defendant*. | |

## DEFENDANT JARED KREITER'S MEMORANDUM IN SUPPORT OF HIS RULE 12(B)(6) MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Defendant Jared Kreiter ("Kreiter"), through his attorneys, submits this memorandum in support of his motion to dismiss Plaintiff Traffic Tech, Inc.'s ("Traffic Tech") Third Amended Complaint ("TAC"). In support thereof, Kreiter states as follows:

### INTRODUCTION

On September 1, 2015, Judge Amy St. Eve, sitting in an emergency court setting, denied Traffic Tech's motion for a temporary restraining order to enjoin Kreiter and Total Transportation Network ("TTN") from pursuing their business. The court ruled that Traffic Tech had not provided any evidence justifying trade secret protection, and that its breach of contract claim could not succeed because the non-solicitation clause contained therein was unenforceable. Now, what is left in this case is Traffic Tech's bare TAC, which contains many conclusions but is devoid of factual content, as required by *Twombly* and *Iqbal*.

The TAC should be dismissed with prejudice pursuant to Rule 12(b)(6). Traffic Tech's breach of contract claim fails because the contract is unenforceable, and, at any rate, Traffic Tech has not sufficiently pled breach or damages. Traffic Tech's claim under the ITSA also fails because it has not articulated a single trade secret, nor has it sufficiently alleged misappropriation and use in the defendants' business. Finally, Traffic Tech's unjust enrichment and breach of

1

fiduciary duty claims fail to state a claim, and are both preempted by the ITSA. For these reasons, this Court should dismiss Traffic Tech's fourth complaint with prejudice pursuant to Rule 12(b)(6).

## FACTUAL BACKGROUND

The TAC alleges the following, which for purposes of the motion to dismiss, are taken as true:

### *Traffic Tech and TTN Compete in the Logistics Industry*

Traffic Tech is a Canadian company conducting business in the logistics industry. TAC, ¶ 1. Traffic Tech admits that defendant TTN is "a third party logistics provider that offers shipping, tracking, and transportation management services directly in competition with Traffic Tech." *Id.* ¶ 21.

### *Traffic Tech Hires Kreiter from a Competitor in 2013*

Prior to October of 2013, Traffic Tech alleges it "spent considerable resources to source Defendant Kreiter" from a competitor. *Id.* ¶ 9. On October 24, 2013, Kreiter allegedly was hired to be the Vice President of Business Development at Traffic Tech, and remained in this role until August 19, 2014, when he voluntarily resigned. *Id.* ¶¶ 10, 28. In all, Kreiter was employed with Traffic Tech for a mere ten months. *Id.* ¶ 10. During this time, Traffic Tech alleges that Kreiter was a "top sales employee of Traffic Tech, and averaged approximately $50,000 in gross profits per month during his time at Traffic Tech." *Id.* ¶ 15.

### *Traffic Tech's Alleged Confidential Information and Trade Secrets*

Traffic Tech further alleges that Kreiter was privy to confidential information with the understanding that he would protect its confidentiality. *Id.* ¶¶ 12, 13. Traffic Tech alleges its confidential information consists of general categories such as "sales and marketing techniques, price lists, customer names, contracts and supplier lists." *Id.* ¶ 12. Traffic Tech also claims it has trade secrets, generally labeling these secrets as "production and engineering processes,

2

discoveries, formulas, inventions, concepts, ideas and know-how, and the embodiment thereof…." *Id.* Traffic Tech does not describe in detail any trade secret, but rather claims that the above categories of information are "not generally known in the industry," and give Traffic Tech "an economic advantage over its competitors" such as TTN. *Id.* ¶ 14.

### *Traffic Tech's Non-Disclosure Clause*

Traffic Tech alleges that when Kreiter was hired, he signed an employment agreement ("Employment Agreement") containing a non-disclosure clause ("Non-Disclosure Clause") and a non-solicitation clause ("Non-Solicitation Clause"). *Id.* ¶¶ 17-18. The Non-Solicitation Clause (Section 6.03) stated the following:

> This agreement specifically allows the employee to compete with the company for business should he leave its employment. However, only accounts specified in Appendix "A" are exempt from this agreement. The employee will not solicit any existing clients of the company (except the clients notated on appendix "A") for a period of 18 months after the termination date. The employee will also not solicit any Traffic Tech account managers or employees to leave Traffic Tech for a period of 18 months after the termination date.

Dkt. 80-1, p. 6.

### *Kreiter's Resignation from Traffic Tech and Alleged Misappropriation*

Traffic Tech alleges that "on information and belief" Kreiter was approached by TTN to work for it, and that negotiations began between the two parties regarding an "employment opportunity" as early as June 2014. *Id.* ¶¶ 22-23. Again, on "information and belief," Traffic Tech alleges that TTN reached a deal with Kreiter regarding employment by June 2015. *Id.* ¶ 24. According to Traffic Tech, Kreiter began working at Traffic Tech as early as July 2015. *Id.* ¶ 25. Traffic Tech further alleges that Kreiter sent himself Traffic Tech confidential information, which Traffic Tech only specifies as "documents and communications, including rates, pricing requests, customer contact information, etc…." *Id.* ¶ 26. Traffic Tech also alleges that some "documents and communications" were forwarded to TTN. *Id.* ¶ 27. Traffic Tech does not specify any particular documents taken, nor does it attach any exhibits of such documents.

Kreiter resigned on August 19, 2014. *Id.* ¶ 28. Traffic Tech alleges that subsequently, Kreiter "had been pursuing competitive opportunities using Traffic Tech resources and equipment, as well as actively soliciting Traffic Tech customers, in violation of his Agreement." *Id.* Traffic Tech further alleges that "upon information and belief," Kreiter engaged in "active and willful solicitation of at least thirteen, and likely more, Traffic Tech customers, including Ryder Supply Chain Solutions, Indiana Packers, Inc., ABC/Dr. Pepper Snapple Group, Perdue, Cott Beverage, Keystone Foods, McLane Foods, Martinelli's, Ace Hardware, Nestle Waters, Rich Products, West Liberty Foods, AdvancePierre Foods, Dean Foods and DSC Logistics." Dkt. 88, ¶ 38. Traffic Tech does not refer to these entities again in the TAC.

### *Causes of Action*

Traffic Tech brings five causes of action against Kreiter: Count I – breach of contract; Count II – breach of fiduciary duty; Count III – breach of contract for a promissory note; Count IV – violation of the Illinois Trade Secrets Act ("ITSA"); and Count VI – unjust enrichment.

## LEGAL STANDARD

In order to survive dismissal under Rule 12(b)(6), Traffic Tech "must state a claim to relief that is 'plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are "accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

<u>ARGUMENT</u>

I.  **TRAFFIC TECH'S COUNT I CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).**

Traffic Tech has not pled a valid breach of contract claim because:  (1) the Employment Agreement is unenforceable; (2) Traffic Tech has not sufficiently alleged any breach or damages; and (3) Traffic Tech is not entitled to restrict Kreiter's ability to pursue his trade.

A.  **The Non-Solicitation Clause Is Unenforceable.**

1.  **The Non-Solicitation Clause is unreasonable under Illinois law.**

As Judge St. Eve held in denying Traffic Tech's motion for a TRO, the Non-Solicitation Clause is unreasonable under Illinois law.  It does not contain any geographic limitation, nor does it have any limitations as to customer scope or reach.  Rather, it is a blanket prohibition against contacting Traffic Tech "existing clients", without ever defining who those clients are.  Courts "are hesitant to enforce noncompetition agreements that prohibit employees from soliciting or servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed."  *Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 308 Ill. App. 3d 337, 345 (1st Dist. 1999).  Where "an activity restraint, such as a covenant not to solicit, lacks both a geographic limitation and any qualifying language concerning the particular customers to which it applies, it is unreasonable."  *See id.* at 345-46 (finding that non-solicitation clause was unreasonable).

The Non-Solicitation Clause is a blanket prohibition against competition, despite the fact that the Employment Agreement expressly allows for competition.  *See* Dkt. 80-1, Section 6.03 ("This agreement specifically allows for the employee to compete with the business should he leave its employment.")  This is the very anti-competitive restraint of trade that *Eichmann* forbids. *See Cambridge Eng., Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 455 (1st Dist. 2007) (holding that the nonsolicitation clause was unreasonable because it extended broadly to

"any customer" of the company with no limitations).[1]  For this reason, Traffic Tech's breach of contract claim should be dismissed.

### 2. The Non-Solicitation Clause is not supported by adequate consideration.

The Non-Solicitation Clause also is unenforceable because it lacks adequate consideration, since Traffic Tech admits Kreiter did not work continually for Traffic Tech for over two years. Adequacy of consideration "is analyzed in the context of postemployment restrictive covenants because it has been recognized that a promise of continued employment may be an illusory benefit where the employment is at-will." *McInnis v. OAG Motorcycle Ventures, Inc.*, 2015 IL App (1st) 142644, ¶ 27.  Under Illinois law, "continued employment for a substantial period of time beyond the threat of discharge is sufficient consideration to support a restrictive covenant in an employment agreement. *Id.*  Generally, courts have held that continued employment for two years or more constitutes adequate consideration. *See id.* (finding that restrictive covenant lacked consideration because employee not continually employed for more than two years); *Prairie Rheumatology Assoc., S.C. v. Francis*, 2014 IL App (3d) 140338, ¶¶ 14-15 (same); *Fifield v. Premier Dealer Servs., Inc.*, 2013 IL App (1st) 120327, ¶ 19.  Here, Traffic Tech admits that Kreiter was employed with Traffic Tech for less than one year.  *See* Dkt. 61, ¶¶ 10, 28.  This is "far short of the two years required for adequate consideration under Illinois law." *Id.*  There is insufficient consideration to support the validity of the Non-Solicitation Clause.

Traffic Tech argues it paid Kreiter $250,000 as consideration for signing "the agreement," not independent consideration for any Non-Solicitation Clause.  TAC, ¶ 17.  Furthermore, the Employment Agreement never states that the $250,000 bonus is consideration for the Non-Solicitation Clause.  To the contrary, Kreiter's compensation, including his base salary, bonus and

---

[1] And, when Traffic Tech moved for a TRO, it attached an email showing one of its "existing clients", Masonite, reaching out to its competitors (including Kreiter) for a better price quote.  *See* Dkt. 81.  This reality of the logistics industry, as shown by this email, further underscores why the Non-Solicitation Clause unreasonably restricts Kreiter's ability to practice his trade in a highly fluid and competitive industry.

benefits, are listed together in the Employment Agreement, with no reference to the Non-Solicitation Clause. And, the Non-Solicitation Clause never states that Kreiter was paid any extra compensation for agreeing to it, nor does it even mention consideration at all. *See* Dkt. 80-1, p. 6. Traffic Tech should not be allowed to backdoor Kreiter's promised salary as a means of justifying a Non-Solicitation Clause for which Kreiter never received separate consideration.

> **B.      Traffic Tech has not sufficiently alleged that Kreiter breached the Employment Agreement nor has it alleged any damages.**

Furthermore, Traffic Tech has not sufficiently alleged that Kreiter breached the Employment Agreement. Despite providing conclusory allegations that Kreiter solicited Traffic Tech clients, Traffic Tech does not provide any detail as to when and how this solicitation occurred, what information was told to clients, and if clients left Traffic Tech because of this solicitation. To the contrary, the TAC is pled on information and belief. Dkt. 80, ¶ 38.

Tellingly, Traffic Tech did not specify any detail or facts regarding Kreiter's alleged solicitation of any entities. And, Traffic Tech provides no allegations or supporting documentation showing any harm suffered. Traffic Tech concludes that Kreiter sent confidential Traffic Tech information to himself and others via email, but does not provide to this Court any email exhibits, nor does it even specify any emails that would constitute a potential breach of contract. And, there are no allegations of any lost revenue or profits taken by Defendants. At best, Traffic Tech complains that some customers have stopped doing business with it, but Traffic Tech never ties this competitive reality to any conduct on the part of Defendants. *See* Dkt. 80, ¶42.

> **C.      Traffic Tech is Not Entitled to the Remedies it Seeks.**

Alternatively, this Court should strike the remedies Traffic Tech seeks under its breach of contract claim. Traffic Tech seeks to have this Court create a constructive trust on profits Kreiter has made from "customers of Traffic Tech whom Kreiter solicited." Dkt. 80, p. 9. Traffic Tech also seeks to have Kreiter pay back Traffic Tech the $250,000 alleged signing bonus and the

$59,553 in recruiting fees it spent, as well as attorney's fees and costs. *Id.* There is no legal basis for any of these remedies.

First, Traffic Tech cannot have this court enter the extraordinary remedy of a constructive trust on profits from Kreiter's alleged solicitation of clients, where Traffic Tech has not even provided a single allegation as to this solicitation. Traffic Tech's only solicitation allegation is made on information and belief, and only generally concludes that a solicitation occurred. Dkt. 80, ¶ 38. Furthermore, Traffic Tech has not, and cannot explain why it would ever be entitled to seek the $250,000 bonus *plus recruiting fees*, where the contract does not entitle this remedy and Traffic Tech *admits* that Kreiter was, while employed at Traffic Tech, a top salesman who achieved large profits for the company. *Id.* ¶ 15. Traffic Tech nowhere in the TAC discusses which provision of the Employment Agreement entitles it to this type of relief. To the contrary, the Employment Agreement specifically provides that Kreiter is entitled to compete with Traffic Tech upon leaving its employment. Dkt. 80-1, Section 6.03. And, there is no employment term required in the contract, nor any remedy for an early departure by Kreiter.

Traffic Tech cannot seek to impose non-competitive remedies against Kreiter where it specifically agreed that Kreiter can compete with it. *See Bodemer v. Swanel Bev., Inc.,* 884 F. Supp. 2d 717, 736 (2012) ("Moreover, it is clear that [the former company] has attempted to enforce the confidentiality provision in a way that would extend beyond keeping trade secret and other confidential information confidential."); *see Emergency Med. Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996) ("[B]ecause Illinois courts favor fair competition and disfavor restraints on trade, we must strictly construe noncompetition agreements against the party seeking restriction."); *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶16 (discussing how courts scrutinize non-competition agreements for "reasonableness," given that such contracts deprive[] the public of the industry of the promisor, and deprive[] the promisor of the opportunity to pursue an occupation and thereby support his or her family.").

8

## II.     TRAFFIC TECH'S CLAIM UNDER THE ILLINOIS TRADE SECRETS ACT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).

Traffic Tech's Count IV claim under the ITSA should also be dismissed.  To state a claim under the ITSA, the plaintiff must allege the subject information was (a) a trade secret, (b) misappropriated, and (c) used in the defendant's business.  *Capgemini Fin. Servs. USA Inc. v. Infosys Ltd.*, No. 14 C 464, 2014 WL 340206, at *2 (N.D. Ill. Jan. 30, 2014).  Traffic Tech has not properly alleged any trade secret, nor has it alleged misappropriation or use.

### A.     Traffic Tech Has Not Alleged A Valid Trade Secret.

To establish a trade secret, Traffic Tech must show its information (1) is sufficiently secret to derive economic value from not being known to other persons who can obtain economic value from their disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.  *Carbonic Fire Extinguishers, Inc. v. Heath*, 190 Ill. App. 3d 948, 952-53 (2d Dist. 1989).  Traffic Tech cannot meet these elements.

### 1.     Traffic Tech has not specified nor defined any claimed trade secret.

First, Traffic Tech does not ever define what it claims are trade secrets.  At best, Traffic Tech provides the following general allegation: "More specifically, Traffic Tech's lists of actual or potential customers, clients, suppliers, rates, lanes, etc., clearly constitute trade secrets under the Act."  TAC, ¶ 68.  Without more, and as Judge St. Eve recognized when denying Traffic Tech's motion for a TRO, this general allegation is inadequate.   Dkt. 81, p. 3; *see GlobalTap LLC v. Elkay Mfg. Co.,* No. 13 C 632, 2015 WL 94325, at *6 (N.D. Ill. Jan. 5, 2015) ("[t]he court cannot analyze whether a piece of information was sufficiently secret to derive economic value or whether [plaintiff] took reasonable efforts to keep information secret without first knowing, with particularity, what information comprises the secret").

Furthermore, the general categories of pricing and customer information Traffic Tech claims are trade secrets are typically not viewed as such.  *See Applied Indus. Mat. Corp. v. Brantjes*, 891 F. Supp. 432, 437-38 (N.D. Ill. 1994) ("Indeed, the Illinois appellate courts which

have addressed the issue have consistently held that price information which is disclosed by a business to any of its customers, unlike a unique formula used to calculate the price information which is not disclosed to business's customers, does not constitute trade secret information protected by the Act."); *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp. 2d 667, 681 (S.D. Ind. 1998) ("Nevertheless, such information about customers, cost, and pricing is among the most fragile and ephemeral types of trade secrets."); *Carbonic Fire Extinguishers, Inc. v. Heath*, 190 Ill. App. 3d 948, 953 (1989) (holding that mere pricing information "is not sufficiently secret to derive economic value from not being generally known to persons who could obtain economic value from its disclosure or use."). This is especially true in the logistics industry, which, as evidenced by the abovementioned email Traffic Tech attached to its TRO papers, shows a Traffic Tech "customer" seeking out its competitors for a better price. *See* Dkt. 81 (discussing the email).

And, Traffic Tech never discusses (1) any specific lists that keep its contacts; (2) the type of information on these lists; (3) who created these lists; and (4) where they are safeguarded. *See Capgemini*, 2014 WL 340206, at *1 ("Still, it is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets."). Absent specifics, Traffic Tech's ITSA claim should be dismissed. *See id.* ("Absent specific examples of the types of information it asserts are at risk here, [plaintiff] has given no basis on which to distinguish between information generally known in the industry and acquired through experience from protectable information or concrete secrets.").

At best, Traffic Tech's President Mark Schiele describes in his affidavit (to the TRO motion) only one specific source of information: the Traffic Tech Sales and Logistics System ("TTSLS"), which, according to Schiele, is password protected and access is only provided on a "need to know" basis. Dkt. 63-2, ¶¶ 8-9. Schiele further states that TTSLS contains confidential information, but never describes exactly what type of information TTSLS holds. *See Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 741 (1st Dist. 2009) (dismissing complaint because

plaintiffs failed to show that their general categories of alleged computer information was "sufficiently secret to derive economic value or that [their] secrecy was adequately maintained."). As Judge St. Eve recognized in denying Traffic Tech's motion for a TRO, there is no way for this Court to determine what information is stored on TTSLS, or if it contains any trade secrets, or if Kreiter had access to this information. Traffic Tech's ITSA claim should be dismissed.

> **2.      Traffic Tech has not sufficiently alleged the value of any claimed trade secret or how it was safeguarded.**

Traffic Tech also fails to sufficiently allege any value of its alleged trade secrets. Traffic Tech merely alleges these secrets are "sufficiently secret to derive economic value" and that they give Traffic Tech "an economic advantage over its competitors" such as TTN. TAC, ¶¶ 14, 68. This conclusion is not enough to meet Traffic Tech's burden. *See Adams*, 742 F.3d at 728 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Furthermore, Traffic Tech also has not provided any sufficient allegation as to how its claimed trade secrets were safeguarded. Traffic Tech claims it keeps such information secret by executing employment agreements with confidentiality clauses, having confidentiality policies, and limiting access to such information to key employees such as Kreiter. Dkt. 80, ¶ 70. However, since Traffic Tech has not provided any specifics as to what its trade secrets are, these general statements as to confidentiality are not enough. As Judge St. Eve recognized, the only specific potential source of confidential information, the Traffic Tech Sales and Logistics System ("TTSLS"), is not supported by any allegation as to the level of secrecy maintained. *See* Dkt. 81, p. 4. Traffic Tech has not met its initial burden for alleging a trade secret under the ITSA.

> **3.      Traffic Tech's allegations and supporting documents as to the logistics industry undermine its trade secret allegations.**

Finally, despite referring to "emails" Kreiter allegedly sent and "documents" Kreiter allegedly misappropriated, the only email Traffic Tech ever attached to its pleadings illustrates

why it cannot show it has trade secrets under the ITSA. As Judge St. Eve recognized, the August 27, 2015 email Traffic Tech referred to in its TRO papers as "evidence" of misappropriation actually showed an alleged Traffic Tech customer emailing all of its competitors, including Kreiter, for a price quote. *See* Dkt. 81 (discussing email). Given this reality that Traffic Tech has provided to the Court, Traffic Tech cannot show how the alleged information it claims are trade secrets are not stale and without value. *Trailer Leasing Co. v. Assoc. Com. Corp.*, 1996 WL 450801, at *1 (N.D. Ill. Aug. 8, 199 ("By all accounts, this is a highly competitive business and it is unlikely that rate information is ever secret, and if so, that it remains secret for very long. If competitor 'A' gives a customer an advantageous rate, it will not be long before the customer shops that rate around and tries to get competitor 'B' to go even lower; that is the nature of a competitive market."). *See Applied Indus. Mat. Corp. v. Brantjes,* 891 F. Supp. 432, 437-38 (N.D. Ill. 1994) (denying trade secret protection where the product cost information was "so outdated that it lack[ed] current economic value."). For this reason, Traffic Tech's ITSA claim should be dismissed for failure to state a claim.

### B. Traffic Tech Has Not Sufficiently Alleged Misappropriation of Wrongful Use.

For the abovementioned reasons, Traffic Tech has not sufficiently alleged misappropriation. Kreiter has vast industry experience and is free to use it to conduct his business. Indeed, that is why Traffic Tech spent what it alleges were "considerable resources" to hire him in the first place. Kreiter's mind is not a Traffic Tech trade secret. *See Capgemini*, 2014 WL 340206, at *3 ("[E]mployees working in a competitive market "must be entitled to utilize the general knowledge and skills acquired through experience in pursuing [their] chosen occupation."); *Am. Hardware Mut. Ins. Co. v. Moran*, 545 F. Supp. 192, 198 (N.D. Ill. 1982) ("In other words, an employee cannot be forced to erase from his mind all the knowledge and skills that he acquired during prior employment.").

Furthermore, Traffic Tech has not pled that Defendants actually used Traffic Tech's trade secrets in their business. Instead, Traffic Tech merely speculates as to use on information and belief. Dkt. 80, ¶¶ 5-6. Traffic Tech also vaguely describes how Kreiter emailed TTN and discussed going on a similar trip with a customer to one he did in the past while at Traffic Tech. Without anything more, these pleadings are deficient. *See Woodard v. Harrison*, 2008 WL 4724370, at *3 (C.D. Ill. Oct. 24, 2008) (dismissing trade secret complaint because plaintiff did not allege "use," other than speculating as to future harm); *Abbott Labs. v. Chiron Corp.,* 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) (finding that complaint did not sufficiently allege misappropriation and use); *see also Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722 (2009) ("P]laintiffs failed to properly plead that defendants used the information in their business, which is also a required element in a misappropriation of trade secrets claim.").

## III. TRAFFIC TECH'S BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).

Traffic Tech's breach of fiduciary duty claim also fails as a matter of law. As an initial matter, this claim is preempted by the ITSA, which preempts "conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. Traffic Tech's fiduciary duty claim -- predicated on Kreiter's alleged conduct of disclosing confidential information to TTN (Dkt. 61, ¶¶ 52, 58) -- is identical to its ITSA misappropriation claim and therefore preempted. *See Carpenter v. Aspen Search Advisers, LLC*, No. 10 C 6823, 2011 WL 1297733, at *2 (N.D. Ill. Apr. 5, 2011) (finding that breach of fiduciary duty claim was preempted by the ITSA because it arose from defendant's alleged access to confidential data); *Thomas & Betts Corp. v. Panduit Corp*., 108 F. Supp. 2d 968, 972 (N.D. Ill. 2000) (same).

Even if this claim were not preempted, Traffic Tech has not sufficiently alleged that Kreiter had any fiduciary duty to Traffic Tech or committed a breach. At best, Traffic Tech alleges that Kreiter was in contact with TTN while still working for Traffic Tech. But, Illinois

13

courts allow departing employees to discuss future plans with new employers. *Ellis & Marshall Assoc., Inc. v. Marshall,* 16 Il. App. 3d 398, 402-03 (1st Dist. 1973); *Radiac Abrasives, Inc. v. Diamond Tech., Inc.,* 177 Ill. App. 3d 628, 637 (2d Dist. 1988).

## IV. TRAFFIC TECH'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

Traffic Tech's unjust enrichment claim should also be dismissed for several reasons. First, like the breach of fiduciary duty claim, it is preempted by the ITSA. *See Cronimet Holdings, Inc. v. Keywell Metals, LLC,* 73 F. Supp. 3d 907, 920 (N.D. Ill. 2014) (dismissing unjust enrichment claim as preempted by the ITSA). Second, Traffic Tech cannot recover under both a breach of contract theory and an unjust enrichment theory. *Shaw v. Hyatt, Int'l Corp.,* 461 F.3d 899, 902 (7th Cir. 2006). Rather, Traffic Tech's unjust enrichment claim fails from a pleading standard because it references and is based upon the Employment Agreement. "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.,* 383 F.3d 683, 688-89 (7th Cir. 2004). Furthermore, as discussed above, and as Judge St. Eve recognized, Traffic Tech's Non-Solicitation Clause is unenforceable as a matter of law. Traffic Tech should not be allowed to backdoor its unreasonable agreement through the amorphous theory of quantum meruit. *See Liautaud v. Liautaud*, 221 F.3d 981, 989 (7th Cir. 2000) ("We also agree with the district court that Illinois law does not allow a claim for unjust enrichment when the underlying contract has been held to be void as against public policy.") Finally, the substance of Traffic Tech's unjust enrichment claim is that it would be unjust for Kreiter to keep the $250,000 signing bonus he received in October of 2013. But, Traffic Tech admits that Kreiter was a top sales employee for Traffic Tech during the ten months that he worked there, and earned for the company tens of thousands of dollars in sales profits each month. Dkt. 80, ¶ 15. Accepting this as true, Traffic Tech cannot make any legitimate argument as to why it would be entitled to a disgorgement from Kreiter of the salary he earned through hard work at Traffic Tech. Traffic Tech received a

14

substantial and valuable benefit through its hiring of Kreiter. For these reasons, Traffic Tech's unjust enrichment claim should be dismissed pursuant to Rule 12(b)(6).

## V. TRAFFIC TECH'S SMALL AMOUNT BREACH OF CONTRACT CLAIM BASED UPON A PROMISSORY NOTE SHOULD BE DISMISSED.

Finally, Traffic Tech has brought a separate breach of contract claim (Count III) based upon a $10,000 promissory note and facts unrelated to the rest of Traffic Tech's pleadings. This contractual claim seeks damages well below the federal diversity jurisdictional requirement. *See* 28 U.S.C. § 1332. If this Court dismisses Traffic Tech's other claims for the reasons stated above, then Count III must also be dismissed for failure to satisfy the amount in controversy requirement for purposes of federal diversity jurisdiction.

## CONCLUSION

For the abovementioned reasons, Defendant Jared Kreiter respectfully requests that the TAC be dismissed in its entirety with prejudice.

Respectfully submitted,

s/Lawrence C. Rubin_____

Lawrence C. Rubin (#2413426)
Daniel R. Saeedi (#6296493)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: 312-527-4000
Facsimile: 312-527-3122

*Counsel for Jared Kreiter*

13351648.1

15